# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

LEONARD A. LAWSON, JR.,

        Plaintiff,

    v.

JEFFERY GREGG, *et al.*,

        Defendants.

Case No. 3:11-cv-00151-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 108 is Defendants Jeffrey Gregg, Richard Youngblood, Michael Dahlstrom, Monique Doll, and Nathaniel Clementson's motion for summary judgment. Plaintiff Leonard Lawson opposed at Docket 118. Defendants replied in support of their motion at Docket 122. Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

The underlying facts and procedural history in this case are set forth in the Court's October 20, 2015 order on Mr. Lawson's Motion for Summary Judgment and Defendants' Motion to Dismiss Based on Qualified Immunity.[1] As explained in that order, Mr. Lawson initiated this action in 2011 by filing a Civil Rights Complaint alleging that Defendants engaged in misconduct while entering and

---

[1] Docket 93; *see* Docket 72 (Mot. for Summary Judgment); Docket 87 (Mot. to Dismiss).

securing his residence to retrieve a package containing cocaine.[2]  He filed a Second Amended Complaint ("SAC") on September 3, 2013.[3]  The SAC alleges two causes of action: (1) violation of Mr. Lawson's Fourth Amendment right "to not be subjected to unreasonable search and seizure," and (2) violation of Mr. Lawson's Fourteenth Amendment due process rights.  The SAC alleges that on July 14, 2010, at approximately 3:45 p.m., Mr. Lawson was unlawfully arrested while standing on his back porch.  The SAC alleges that law enforcement then conducted a "warrantless" search of Mr. Lawson's home and seized property within the home, including the shotgun that was used as evidence in Mr. Lawson's criminal case.[4]  The SAC alleges that prior to Mr. Lawson's arrest, he "was not a person of interest of any investigation," and law enforcement "did not even know [his] name."[5]  The SAC asserts that Mr. Lawson's arrest and the subsequent search of his home and seizure of evidence were unlawful.  The SAC also asserts that Mr. Lawson's indictment was "a direct result of the unlawful arrest, search and seizure" and therefore violative of his due process rights.  The SAC requests $100,000 in compensatory damages, $1,000,000 in punitive damages, "[a]n order requiring defendant(s) to possess a valid warrant to search and or seize people or

---

[2] Docket 93 at 3; *see* Docket 1 (Compl.) at 1.

[3] Docket 34 (SAC).

[4] Docket 34-2 (Attachment 2 to SAC); Docket 34-3 (Attachment 3 to SAC).

[5] Docket 34-2 (Attachment 2 to SAC) (emphasis omitted).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 2 of 20

property 'before' they enter a home or arrest a non-suspect," and "[a] declaration that it won't happen again[.]"[6]

Mr. Lawson filed a Motion for Summary Judgment on June 1, 2015, and Defendants filed a Motion to Dismiss Based on Qualified Immunity on August 10, 2015.[7] The Court addressed both motions in its October 20, 2015 order, and concluded that each Defendant was entitled to qualified immunity.[8] The Court concluded that "even though Defendants violated Mr. Lawson's constitutional rights [by entering Mr. Lawson's home], Defendants are entitled to qualified immunity for their actions in entering the home because reasonable officials would not have realized they were violating the law."[9] The Court further concluded that "Defendants are also entitled to qualified immunity for Mr. Lawson's warrantless arrest" because "Defendants had probable cause to make a warrantless arrest under the circumstances."[10] Finally, the Court also "grant[ed] Defendants' Motion to Dismiss with respect to Mr. Lawson's Fourteenth Amendment Claims."[11]

---

[6] Docket 34 (SAC) at 8.

[7] Docket 72; Docket 87.

[8] Docket 93. Because Defendants attached supporting documentation to their motion to dismiss, the Court treated it as a motion for summary judgment as to Mr. Lawson's Fourth Amendment claims. Docket 93 at 6.

[9] Docket 93 at 15.

[10] Docket 93 at 16.

[11] Docket 93 at 17 (footnote omitted).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 3 of 20

Mr. Lawson filed a Notice of Appeal on November 19, 2015.[12] On May 7, 2018, the Ninth Circuit issued a memorandum opinion addressing Mr. Lawson's appeal.[13] The Ninth Circuit held that the Court did not err in concluding that the officers were entitled to qualified immunity as to their entry into Mr. Lawson's home and their warrantless arrest of Mr. Lawson.[14] The Ninth Circuit also held, however, that the Court "did err in granting the officers qualified immunity with respect to the protective sweep:

> [The protective sweep] was not a "quick and limited search of [the] premises . . . to protect the safety of police officers or others." Any reasonable officer in the Defendants-Appellees' position would have known he was violating clearly established Fourth Amendment jurisprudence because the Defendants-Appellees took 64 photographs, obtained luggage tag and computer information, and recovered a black container hidden behind the computer during the protective sweep.[15]

Accordingly, the Ninth Circuit "reverse[d] the [Court's] grant of qualified immunity with regard to the protective sweep" and remanded for further proceedings consistent with that disposition.[16]

---

[12] Docket 98 (Notice of Appeal). Mr. Lawson did not appeal the Court's dismissal of his Fourteenth Amendment Claims, and the Ninth Circuit did not address the dismissal of those claims. *See* Docket 104 (Mem. Opinion). Accordingly, Mr. Lawson's Fourteenth Amendment claims are no longer at issue.

[13] Docket 104.

[14] Docket 104 at 3–4, 5.

[15] Docket 104 at 4–5 (citation omitted) (alteration in original).

[16] Docket 104 at 6.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 4 of 20

On August 23, 2018, Defendants filed a motion for summary judgment as to all claims, along with declarations describing "[D]efendants' individual actions with respect to the items the Ninth Circuit mentioned in its opinion."[17] Defendants contend that the declarations show that none of the Defendants violated Mr. Lawson's constitutional rights.[18]

## LEGAL STANDARD

### I. Jurisdiction and Applicable Law

The Court has jurisdiction over Mr. Lawson's 42 U.S.C. § 1983 claim pursuant to its 28 U.S.C. § 1331 federal question jurisdiction.

### II. Law of the Case Doctrine and Rule of Mandate

"The law of the case doctrine provides that 'a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.'"[19] "The rule of mandate is similar to, but broader than, the law of the case doctrine. A district court, upon receiving the mandate of an appellate court cannot vary it or examine it for any other purpose than execution. Thus, a district court could not refuse to dismiss a case when the mandate required it, and a district court could not revisit its already final determinations unless the

---

[17] Docket 108; *see* Dockets 108-1 through 108-5.

[18] Docket 108 at 19–20.

[19] *Hall v. City of Los Angeles*, 710 F. Supp. 2d 984, 991 (C.D. Cal. 2010), *aff'd in part, rev'd in part*, 697 F.3d 1059 (9th Cir. 2012) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 5 of 20

mandate allowed it."[20] "The 'mandate rule,' under which a district court has no power or authority to deviate from a mandate of the Court of Appeals, is a more powerful version of the law-of-the-case doctrine, which prevents courts from reconsidering issues that have already been decided in the same case."[21]

**III. Scope of Protective Sweep**

"A 'protective sweep' is a quick and limited search of premises . . . conducted to protect the safety of police officers or others."[22] The Fourth Amendment permits protective sweeps, provided that searching officers "'possess[] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer in believing that the area swept harbored an individual posing a danger to the officer or others."[23] However, a protective sweep "is not a license to search every nook and cranny of a house, but is subject to two significant limitations: it 'extend[s] only to a cursory inspection of those spaces where a person may be

---

[20] *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1996) (citations and quotation marks omitted).

[21] *Hall v. City of Los Angeles*, 710 F. Supp. 2d 984, 991 (C.D. Cal. 2010) (citing *Role Models Am., Inc. v. Geren*, 514 F.3d 1308, 1311 (D.C. Cir. 2008)), *aff'd in part, rev'd in part on other grounds*, 697 F.3d 1059 (9th Cir. 2012).

[22] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

[23] *Id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)) (citation and internal quotation marks omitted).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 6 of 20

found' and lasts 'no longer than it takes to complete the arrest and depart the premises.'"²⁴

## IV. Summary Judgment Standard

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.²⁵ Rule 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, a court must accept as true all evidence presented by the nonmoving party and draw "all justifiable inferences" in the non-moving party's favor.²⁶ The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.²⁷ If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.²⁸ The nonmoving party may not rely on mere allegations or

---

²⁴ *United States v. Lemus*, 582 F.3d 958, 962 (9th Cir. 2009) (quoting *Maryland v. Buie*, 494 U.S. 325, 335–36 (1990)).

²⁵ Mr. Lawson cites to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), for the proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See* Docket 118 at 2 (citing *Iqbal*, 556 U.S. at 678). *Iqbal* is inapposite, however; it addresses the standard for a motion to dismiss under Federal Rule of Civil Procedure 12 rather than the standard for a motion for summary judgment under Federal Rule of Civil Procedure 56.

²⁶ *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

²⁷ *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

²⁸ *Anderson*, 477 U.S. at 250; *Oracle*, 627 F.3d at 387.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 7 of 20

denials. To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non[-]moving party."[29] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment to the moving party is appropriate.[30]

"Materials from a proceeding in another tribunal are appropriate for judicial notice."[31] Here, the Court will take judicial notice of testimony from the evidentiary hearing held in January and February 2011 on the motions to suppress filed in Mr. Lawson's criminal case and the affidavit submitted in support of the search warrant for Mr. Lawson's residence.[32]

## DISCUSSION

### 1. Officer Clementson

Officer Clementson's declaration is attached to Defendants' motion.[33] It describes his conduct during the protective sweep. Officer Clementson states that

---

[29] *Anderson*, 477 U.S. at 248.

[30] *Anderson*, 477 U.S. at 249–50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84–85 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

[31] *Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) (citing *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir.1995)), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010).

[32] *See* Dockets 74–77, 85, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Transcripts); Docket 32-4 at 5, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Gregg Aff.); *see also Biggs*, 334 F.3d at 915 n.3 (taking judicial notice of transcript of appellant's hearing before Board of Prison Terms). Mr. Lawson cited the transcript from the evidentiary hearing on the motions to suppress in his memorandum filed in support of his objection to Defendants' earlier motion for summary judgment in 2015. Docket 62 at 2.

[33] Docket 108-5 (Clementson Decl.).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 8 of 20

while sweeping the music room in Mr. Lawson's residence, he saw "a fairly large, flat-screen computer monitor, and that [he] saw that it displayed a FedEx tracking screen."[34] Officer Clementson asserts that he "[does] not remember touching the computer, desk or mouse."[35] He also states that he "saw a black ceramic . . . candle holder . . . . on the shelf area behind the computer," which he "could see . . . without looking behind the computer."[36] Finally, Officer Clementson states that he "saw luggage . . . . sitting in the middle of the room in plain view," and "noticed that the luggage tag indicated a connection with California."[37] Defendants contend that Officer Clementson's declaration proves that "his sweep of the room was quick, and his discovery of the three objects was incidental."[38] Defendants assert that Officer Clementson "swept for about a minute and did not touch any of the three objects to see them," that "[t]he objects were not hidden," and that Officer Clementson "never retrieved the [candle holder] during the sweep."[39]

---

[34] Docket 108-5 at 1.

[35] Docket 108-5 at 1.

[36] Docket 108-5 at 2.

[37] Docket 108-5 at 2.

[38] Docket 108 at 6.

[39] Docket 108 at 15.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 9 of 20

Officer Clementson's declaration does not demonstrate the absence of genuine factual disputes. The Ninth Circuit concluded that Defendants violated the Fourth Amendment by "obtain[ing] luggage tag and computer information" and "recover[ing] a black container hidden behind the computer during the protective sweep."[40] Officer Clementson acknowledges that he made observations about what was displayed on the computer screen and on the luggage tags during the sweep.[41] This information was later included in Officer Gregg's "Affidavit in Support of Application for Search Warrant" for Mr. Lawson's residence.[42] The additional details included in Officer Clementson's declaration do not foreclose the possibility that Officer Clementson violated the Fourth Amendment during the protective sweep. The Court also notes that the assertions in Officer Clementson's declaration and in Defendants' motion are at direct odds with the Magistrate Judge's findings in Mr. Lawson's criminal case.[43] Based on the evidence presented

---

[40] Docket 104 at 4–5.

[41] Docket 108-5 at 1–2.

[42] Docket 32-4 at 5, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB.

[43] The Court adopted the Magistrate Judge's report and recommendation. *See* Docket 87, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Initial Report and Recommendation); Docket 103, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Final Report and Recommendation) (declining to modify Initial Report and Recommendation); Docket 110, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Order Adopting Final Report and Recommendation).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 10 of 20

at the suppression hearing, including Officer Clementson's testimony at that time, the Magistrate Judge noted that "the government does not explain by evidence how the computer screen could reveal the web page for FedEx tracking without the 'mouse' being moved," and found that "[m]oving the mouse was beyond the scope of a lawful protective sweep."[44] On that basis, these items were all suppressed in Mr. Lawson's criminal trial.[45] Defendants nevertheless now assert that "Clementson saw all three objects without touching or moving them."[46]

Because undisputed facts do not establish that Officer Clementson is entitled to judgment as a matter of law, Defendants' motion for summary judgment as to the Fourth Amendment claims against Officer Clementson will be denied.

---

[44] Docket 87 at 36–37, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB. At the suppression hearing, Officer Clementson testified that he may have moved the mouse to turn on the computer screen, but "didn't do so intentionally." Docket 74 at 72, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB; *see id.* ("I may have jarred [the mouse] while I was walking by, but again, I don't recall that."). The Magistrate Judge also heard testimony from Mr. Lawson that the computer screen was equipped with a screensaver that came on automatically after five minutes. Docket 85 at 177, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB.

[45] *See* Docket 87 at 32–38, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB; Docket 110, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB.

[46] Docket 108 at 8.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 11 of 20

### 2. Officers Doll and Gregg

Officer Doll's declaration states that she "was only in the [music] room for approximately 8–10 seconds" and that she did not "see the luggage tags, a computer screen, or any items behind a computer screen" while in the room.[47] She further states that following the sweep, she returned to the DEA office to assist Officer Gregg in writing an application for a search warrant and subsequently drove to the courthouse to apply for the warrant.[48] Officer Doll's current declaration states that she "was not aware" that the items described in the Ninth Circuit opinion "had been observed prior to the second search warrant for the residence being obtained until [she] read" the Ninth Circuit's decision.[49] Officer Gregg's declaration states that he "did not participate in the sweep," and that he left Mr. Lawson's residence shortly after arriving in order "to work on the affidavit for the search warrant."[50]

---

[47] Docket 108-4 at 3 (Doll Decl.).

[48] Docket 108-4 at 5, 7. The Magistrate Judge eventually asked Officer Gregg to come to the courthouse and apply for the warrant, because "the affidavit reflected [Officer] Gregg's training and experience and not" Officer Doll's. Docket 108-4 at 7.

[49] Docket 108-4 at 6.

[50] Docket 108-2 at 1–2 (Gregg Decl.).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 12 of 20

Defendants contend that these declarations show that Officers Doll and Gregg "deserve a grant of summary judgment on the sweep."[51]

Officer Doll and Officer Gregg's recent declarations do not show that summary judgment in their favor is warranted. The declarations suggest that both Officer Doll and Officer Gregg participated in applying for the second warrant for Mr. Lawson's residence.[52] The officers' affidavit for the search warrant includes information about items found in the music room:

> In a downstairs recreation room a computer screen was observed, the screen was on and a web page for Fed Ex tracking was observed. Also in the same room a black ceramic container which appears identical to the one seized from the Fed Ex parcel today minus the wax contents. . . . Suitcases bearing luggage tags from California were observed in a downstairs room.[53]

The Ninth Circuit held that this Court erred "in granting the officers qualified immunity with respect to the protective sweep."[54] The Circuit Court based that ruling on its finding that "[a]ny reasonable officer in the Defendants-Appellees' position would have known he was violating clearly

---

[51] Docket 108 at 19–20.

[52] Docket 108-4 at 5, 7; Docket 108-2 at 1–2.

[53] Docket 32-4 at 5, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB. Officer Doll contends that she assisted Officer Gregg with the warrant application and unsuccessfully attempted to procure the warrant on her own. Docket 108-4 at 5, 7. The affidavit's signature block indicates that it was originally to be signed by Officer Doll, but was ultimately signed by Officer Gregg. Docket 32-4 at 6, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB.

[54] Docket 104 at 4.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 13 of 20

established Fourth Amendment jurisprudence because the Defendants-Appellees . . . obtained luggage tag and computer information, and recovered a black container hidden behind the computer during the protective sweep."[55] In light of this language, Defendants have not established that the putting of this information in the warrant did not constitute a constitutional violation.[56]

Furthermore, Officer Doll and Officer Greggs' declarations are difficult to reconcile with one another and with the affidavit submitted in support of the warrant application. Officer Doll contends that she was "not aware" of the items described in the search warrant until she read the Ninth Circuit's decision.[57] However, she also contends that she assisted Officer Gregg in

---

[55] Docket 104 at 4–5; *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (mandating "a two-step sequence for resolving government officials' qualified immunity claims: A court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct" (citing *Saucier v. Katz*, 533 U.S. 194, 121 (2001)); *id.* ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

[56] *Cf. Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (discussing Fourth Amendment violations involving a search or seizure pursuant to a warrant and permitting § 1983 suits where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))).

[57] Docket 108-4 at 6.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 14 of 20

drafting the application for a search warrant that described the items from the music room.[58]

Officer Doll and Officer Greggs' declarations also demonstrate genuine issues regarding Officer Gregg's potential liability for other officers' acts during the protective sweep. Officer Gregg does not address whether or not he ordered the protective sweep. However, Officer Doll contends that "[a]t no time did [she] make any decisions independent of TFO Gregg or GS Youngblood."[59] Section 1983 suits do not allow for the imposition of vicarious liability.[60] However, a supervisor can be held liable in his or her individual capacity under § 1983 where there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[61] If Officer Gregg had actual supervisory authority over the officers who participated in the unconstitutional aspects of the protective sweep, Officer Gregg may be personally liable for constitutional violations

---

[58] Docket 108-4 at 5; Docket 32-4 at 5, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB. Officer Doll was originally to be the signatory on the affidavit. *See* Docket 32-4 at 6, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB; Docket 108-4 at 7.

[59] Docket 108-4 at 8. Officer Youngblood denies that he ordered the protective sweep. Docket 108-1 at 1 (Youngblood Decl. ("Based on radio traffic we were aware that members of the surveillance team had, without my expressed authorization made entry into Early View location."). Officer Gregg contends that he "did not participate in the sweep." Docket 108-2 at 1.

[60] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–92 (1978).

[61] *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 15 of 20

that occurred during the sweep.[62]  On the current record — with all reasonable inferences drawn in Mr. Lawson's favor —triable issues of fact remain that bear on this question.

For the foregoing reasons, Defendants' motion for summary judgment as to the remaining Fourth Amendment claims against Officers Doll and Gregg will be denied.

### 3. Officer Youngblood

Officer Youngblood's declaration states that he arrived at Mr. Lawson's residence after the protective sweep had been conducted, and that he remained at the residence until the search warrant was issued.[63]  Defendants contend that the declaration shows that Officer Youngblood "deserve[s] a grant of summary judgment on the sweep."[64]

Officer Youngblood's declaration does not show that summary judgment in his favor is warranted.  As noted above, while § 1983 suits do

---

[62] *See Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (holding that supervisors must have actual supervisory authority over the government actor who committed the alleged violations for liability to attach).

Summary judgment as to Mr. Lawson's remaining claims against Officer Gregg may also be precluded by the presence of an additional triable issue of fact.  Officer Gregg contends that he "did not participate in the sweep." Docket 108-2 at 1.  However, in an affidavit filed in support of his opposition to the motion for summary judgment, Mr. Lawson contends that "[e]ach of the defendants was in [his] home and participated in the search."  Docket 119 at 2 (Lawson Aff.).

[63] Docket 108-1 at 1–2.

[64] Docket 108 at 19.

Case No. 3:11-cv-00151-SLG,  *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 16 of 20

not allow for the imposition of vicarious liability, a supervisor may be held liable in individual capacity if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" and the supervisor has actual supervisory authority over the government actor who committed the alleged violations.[65] Here, Officer Youngblood asserts that officers entered Mr. Lawson's residence "without [his] expressed authorization."[66] However, Officer Doll contends that "[a]t no time did [she] make any decisions independent of TFO Gregg or GS Youngblood," and Officer Gregg does not indicate that he ordered the sweep.[67] Furthermore, during the evidentiary hearing held on the motions to suppress filed in Mr. Lawson's criminal case, Officer Clementson testified that Officer Youngblood "made the decision that we were going to enter the residence and attempt to retrieve the parcel."[68] Triable issues of fact preclude summary judgment as

---

[65] *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989); *see Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).

[66] Docket 108-1 at 1.

[67] Docket 108-4 at 8; Docket 108-2. Officer Gregg contends that he "did not participate in the sweep." Docket 108-2 at 1.

[68] Docket 74 at 47, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB. The Court also notes that the Magistrate Judge found, based on the evidence before him, that Officer Youngblood "made the decision that the officers would enter [Mr. Lawson's] residence and attempt to retrieve the parcel." Docket 87 at 9, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 17 of 20

to Mr. Lawson's Fourth Amendment claims against Officer Youngblood.[69] Accordingly, Defendants' motion for summary judgment as to those claims against Officer Youngblood will be denied.

### 3. Officer Dahlstrom

Officer Dahlstrom's declaration states that he "helped with the protective sweep for no more than 10 minutes," and that he "didn't conduct a protective sweep of the music room."[70] Officer Dahlstrom further states that he participated in a brief interview of Mr. Lawson following the sweep, and that he left Mr. Lawson's house thereafter.[71] Defendants contend that "[a]s Dahlstrom did not even go into the music room, he should not be found liable for civil damages."[72]

The Ninth Circuit held that Defendants violated the Fourth Amendment by taking photographs, obtaining luggage tag and computer information, and recovering a black container hidden behind the computer in Mr. Lawson's

---

[69] Summary judgment as to Mr. Lawson's remaining claims against Officer Youngblood may also be precluded because Mr. Lawson contends that "[e]ach of the defendants was in [his] home and participated in the search." Docket 119 at 2; *see supra* note 62.

[70] Docket 108-3 at 1.

[71] Docket 108-3 at 1–2.

[72] Docket 108 at 15.

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 18 of 20

music room.[73]  Officer Dahlstrom's declaration indicates that he was not involved in taking any photographs, and that he never saw the items in question.  There is also no indication that Officer Dahlstrom assisted with the application for a search warrant for Mr. Lawson's residence or supervised any of the other officers.  The declaration is consistent with Officer Dahlstrom's testimony during the evidentiary hearing on the motions to suppress filed in Mr. Lawson's criminal case.[74]  Officer Dahlstrom's declaration is not disputed; Mr. Lawson contends only that Officer Dahlstrom "was in [his] home and participated in the search," but does not contradict Officer Dahlstrom's description of his actions during and after the sweep.[75]  Accordingly, Defendants' motion for summary judgment as to the claims against Officer Dahlstrom will be granted.

**CONCLUSION**

In light of the foregoing, IT IS ORDERED as follows:

Defendants' motion for summary judgment at Docket 108 is GRANTED as to Officer Dahlstrom.  Defendants' motion for summary judgment is DENIED as to Officers Clementson, Doll, Gregg, and Youngblood.

---

[73] Docket 104 at 5–6.

[74] Docket 85 at 71–127, *United States v. Lawson*, Case No. 3:10-cr-00116-TMB (Transcript Vol. 4).

[75] Docket 119 at 2.

Case No. 3:11-cv-00151-SLG,  *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 19 of 20

IT IS FURTHER ORDERED that a status hearing to schedule further proceedings in this case will be held on **March 26, 2019** at **10:30 AM** in Anchorage Courtroom 2 before Judge Sharon L. Gleason.[76]

Dated: March 1, 2019

*s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[76] Given that the objects in question were suppressed from Mr. Lawson's criminal trial, the Court queries the extent of damages Mr. Lawson may recover. *See Cuevas v. De Roco*, 531 F.3d 726, 735 (9th Cir. 2008) ("[T]he record indicates that, as part of [a protective] sweep, Deputy Starr opened at least one drawer. . . . Accordingly, Deputy Starr also violated Plaintiffs' Fourth Amendment rights in this regard, although any damages caused are likely minimal.").

Case No. 3:11-cv-00151-SLG, *Lawson v. Gregg, et al.*
Order re Motion for Summary Judgment
Page 20 of 20